IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                CRIMINAL ACTION NO. 2:08-cr-00232

JOSHUA CHAVERS,

          Defendant.

**MEMORANDUM OPINION & ORDER**

Pending before the court are the Defendant's Motion to Suppress June 7, 2008 Statements [Docket 21] and the Defendant's Motion to Exclude Evidence of Prior Felony Convictions at Trial [Docket 23]. For the reasons explained below the Defendant's Motion to Suppress is **DENIED** and the Motion to Exclude Evidence is **GRANTED**.

**I. Background**

On March 19, 2009, I held a hearing to address these motions. At the conclusion of the hearing, I ordered the parties to file supplemental briefs further addressing the questions at issue. Having received those additional briefs and considering all the evidence and argument presented at the hearing and in the briefs, I now reach this decision.

A brief recitation of the facts is appropriate. A large number of law enforcement officers were in the Montgomery, West Virginia area searching for the defendant after a gun in his possession discharged while officers were in close pursuit. Eventually, the defendant was found hiding on the back deck of a residence. The defendant alleges that he was kicked in the face by an

unknown officer during his apprehension. The officers also found two plastic baggies containing crack cocaine in the vicinity—one was about twenty feet from the defendant on the deck and another was in a crevice between two fences another three feet away from the first baggie. After being seized, the defendant was taken to the nearby Montgomery Fire Station for questioning.

Immediately after an initial processing, the defendant and three officers—Lieutenant Young, Lieutenant Stover, and Deputy Perdue—got into a vehicle and drove through Montgomery, visiting locations relevant to the defendant's alleged actions. The court heard conflicting testimony about whose idea it was to visit the locations, who was driving the vehicle, and what occurred during the drive. The United States argues that it was the defendant's idea to look at the relevant locations and that Deputy Purdue drove the vehicle, while the defendant asserts that the officers wanted to take him around and that Deputy Purdue sat in the back of the vehicle alongside the defendant. The defendant further alleges that Deputy Purdue threatened and intimidated him in the vehicle.

After returning to the Montgomery Fire Department, officers conducted three separate interviews with the defendant. Lieutenants Young and Stover took the first recorded statement from 12:40 a.m. until 12:56 a.m. on June 7, 2008. The first recorded statement concluded abruptly after the defendant unequivocally stated, "I'd like to be read my rights and I'd like to have an attorney." Soon after the conclusion of the first recorded statement, the defendant asked to speak specifically with Deputy Purdue. Deputy Purdue conducted the second interview, which was unrecorded. According to Deputy Purdue's testimony, he and the defendant made small talk for the duration of their conversation and it concluded with the defendant requesting to speak with the marshals. The defendant alleges that Deputy Purdue was angry, yelled at the defendant, and acted in a generally menacing manner. It is uncontroverted, however, that the defendant requested to speak with the

marshals and eventually requested to speak with Lieutenant Young again. Lieutenant Young then conducted the third interview, which was recorded and has been referred to as the second recorded statement. At the beginning of the second recorded statement, the defendant asserted that he wanted to talk to Lieutenant Young on his own free will and without being forced by anyone. Soon thereafter, however, the defendant asked numerous questions regarding whether he should have an attorney present. Lieutenant Young told the defendant that if he was going to tell the truth then it did not matter whether he had an attorney present. The defendant then made a number of statements that he now seeks to suppress.

## II. Analysis

After the hearing and the Government's supplemental brief, the defendant conceded that he reinitiated communication with Deputy Perdue immediately after unequivocally invoking his right to counsel and, therefore, waived the right and opened himself up to being subject to further interrogation. *See United States v. Savino*, 82 F.3d 593, 600 (4th Cir. 1996). Furthermore, the defendant conceded that his questions and statements at the beginning of the second recorded statement were equivocal and not enough to invoke his right to counsel. *See Davis v. United States*, 512 U.S. 452, 459 (1994). Nevertheless, the defendant asserts that his statements to Lieutenant Young were not made after a knowing and voluntary waiver of his previously exercised right to counsel. The defendant also continues to seek the exclusion of his prior felony conviction.

### A. The Waiver Was Knowing and Voluntary

The defendant contends that the *Edwards v. Arizona*, 451 U.S. 477, 486 n.9 (1981), inquiry requires "the Government to show that [the defendant] made a knowing and voluntary waiver of his previously exercised right to counsel by speaking to Lt. Young." In determining whether a waiver

is made knowingly and voluntarily, I must look to the totality of the circumstances. *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983). For such a waiver to be involuntary under the Fifth Amendment it must have been "extracted by any sort of threats of violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976)) (alterations in original) (internal quotations omitted). "The mere existence of threats, violence, implied promises, improper influence, or other coercive policy activity, however, does not automatically render a confession involuntary. The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." *Id.* (quoting *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987)) (internal quotations omitted).

Even assuming the truth of the defendant's allegations, I cannot find that the defendant's will was overborne or that his capacity for self-determination was critically impaired. Based on the briefs and the testimony, I **FIND** that the defendant was read his *Miranda* rights. Furthermore, the defendant clearly understood how to invoke his right to counsel, because after stating unequivocally that he wanted to speak to his lawyer, the first recorded statement immediately stopped. Shortly thereafter, however, he asked to speak with Deputy Purdue—an officer that the defendant also claimed made threatening statements to him previously. After speaking with Deputy Purdue, the defendant asked to speak to the marshal and eventually to Lieutenant Young. At the start of the second recorded statement, the defendant stated that nobody forced him to talk again and that he was acting out of his own free will. Although the defendant asked whether he would be better off with his lawyer present, he did not make a request for an attorney in the unequivocal fashion that he used previously. In addition, the defendant requested information on how long of a sentence he would

be facing before he decided to make the statements at issue. This evidence supports a finding that the defendant made an informed decision to reinitiate communication with the officers and to proceed in those communications without a lawyer despite his previously stated request for counsel. I **FIND** that the defendant's will was not overborne and that his capacity for self-determination was not critically impaired.[1] Accordingly, the motion to suppress is **DENIED**.

### B. Evidence of Prior Conviction Is Inadmissable

As an initial matter, I note the important difference between Federal Rules of Evidence 404(b) and 609. Rule 404(b) states that evidence of prior crimes may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," among other things, if certain criteria are met. Rule 609, on the other hand, addresses when a witness can be impeached by evidence of conviction of a crime. The United States admittedly does not intend to use the defendant's prior convictions for impeachment. Accordingly, Rule 609 has no bearing on my ruling. Rather, I must determine whether the evidence is admissible in the Government's case in chief under Rule 404(b).

In order to be admissible the defendant's prior conviction must be relevant to an issue other than character, necessary, and reliable. *See generally United States v. Uzenski*, 434 F.3d 690, 710-11 (4th Cir. 2006). Furthermore, even after meeting those requirements, the evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. The Government argues that the defendant's prior conviction for possession with intent

---

[1] It is disquieting that a defendant can invoke his right to counsel, guaranteed by the Constitution, and then reinitiate conversation in the next breath in such a way that effectively waives his right to counsel. I am constrained by precedent, however, to find that this defendant waived his right to counsel by reinitiating contact with the police and that under the totality of the circumstances the defendant waived his right knowingly and voluntarily.

to distribute 5 grams or more of cocaine base within 1000 feet of a school is "central to proving intent and knowledge regarding his possession of cocaine base in the instant case."  (Supp. Brief U.S. Regarding Def.'s Mot. Suppress 9 [Docket 32].)  In reply, the Government further asserts that the prior conviction is relevant to show absence of mistake.  (Reply U.S. Regarding Def.'s Mot. Suppress 7 [Docket 34].)  In support of its argument, the United States relies on the proposition that

when a criminal defendant's intent is at issue,

> we have regularly permitted the admission of prior acts to prove that element.  A criminal defendant, for example, cannot deny knowledge of drug trafficking or an intent to traffic in drugs and at the same time preclude the admission of the government's evidence of prior occasions when he willingly trafficked in drugs.  We have held repeatedly that when intent to commit an act is an element of a crime, prior activity showing a willingness to commit that act may be probative.

*United States v. Day*, 2000 WL 1233586, at *5 (4th Cir. Aug. 31, 2000) (quoting *Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 52 (4th Cir. 1993) (citations omitted)); *see also United States v. King*, 768 F.2d 586, 588 (4th Cir. 1985) (finding that "prior crimes evidence was relevant to resolution of the intent and absence of mistake issues because it tends to show that king knew how drugs are retailed, and hence was probably aware of the significance of the packaging of the PCP for retail distribution and negotiations with a retailer").

The facts of *Day* and *King* are distinguishable from the facts of this case.  Namely, the arresting officers in *Day* observed the defendant drop drugs and the officers in *King* observed the defendant use marijuana and interact in the vicinity of where the drugs were found.  Accordingly, when the defendants in those cases pled not guilty, they put their intent at issue in such a way that they claimed not to know that the items dropped were drugs or that the drugs found were packaged for use in drug trafficking.  In the instant case, however, there is no witnessing officer who can

confirm any connection between the defendant and the drugs. It follows, therefore, that if the defendant chooses to plead not guilty, he will not necessarily be claiming that he lacks knowledge of the drug trade, but rather he will be claiming that the drugs on the other side of the deck are not his at all. The Government cannot use the defendant's prior drug conviction to argue that it connects the drugs on the deck to the defendant. Such use of a prior conviction would allow the occurrence of precisely what Rule 404(b) intended to prevent—the use of a prior conviction to show that a defendant will act consistently with his prior convictions because it is in conformity with his character.

If the Government is able to prove that the drugs on the deck belong to the defendant, then the defendant's prior conviction is relevant to show that he has knowledge of the drug trade. The evidence of the defendant's prior conviction may be admissible under Rule 404(b) for this purpose. However, the prejudicial effect of such prior convictions would be great. There is a clear risk that the jury would use the evidence of his prior conviction to firm up any doubts they had about whether the drugs actually belong to the defendant. This type of confusion of the issues in the case could easily mislead the jury and would obviously prejudice the defendant. At the same time, the probative value of the evidence is minimal because there are other ways to show that a drug was intended for distribution, such as the packaging and size or amount of the drug. I **FIND** that if the evidence of prior convictions are admissible for any purpose under Rule 404(b), the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and by misleading the jury under Rule 403. Accordingly, the evidence of prior convictions must be excluded and the defendant's Motion to Exclude is **GRANTED**.

### III. Conclusion

For the reasons discussed above, the Defendant's Motion to Suppress June 7, 2008 Statements [Docket 21] is **DENIED** and the Defendant's Motion to Exclude Evidence of Prior Felony Convictions at Trial [Docket 23] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: April 17, 2009

Joseph R. Goodwin, Chief Judge